1              IN THE UNITED STATES DISTRICT COURT

2             FOR THE NORTHERN DISTRICT OF TEXAS

3                       DALLAS DIVISION

4
  UNITED STATES OF AMERICA,      )        3:14-CR-340-K
5                 Government,     )
                                  )
6                                 )
  VS.                             )        DALLAS, TEXAS
7                                 )
                                  )
8  TREVEON DOMINIQUE ANDERSON     )
   and JIMMY HATCHETT,            )
9                 Defendants.     )        September 12, 2018

10

11         TRANSCRIPT OF SUPPRESSION AND MOTIONS HEARING

12             BEFORE THE HONORABLE ED KINKEADE

13              UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16

17  FOR THE GOVERNMENT:          MR. WALT M. JUNKER
                                 UNITED STATES DEPARTMENT OF JUSTICE
18                               NORTHERN DISTRICT OF TEXAS
                                 U.S. Courthouse, Third Floor
19                               1100 Commerce Street
                                 Dallas, Texas  75242
20                               walt.junker@usdoj.gov
                                 (214) 659-8630
21

22

23

24

25

```
 1   FOR THE DEFENDANT,           MR. E.X. MARTIN
     TREVEON DOMINIQUE ANDERSON:  Law Offices of E.X. Martin
 2                                8828 Greenville Avenue
                                  Dallas, Texas  75243
 3                                exmartin@airmail.net
                                  (214) 343-7400
 4

 5                                MS. CAROLYN A. HILL
                                  Attorney at Law
 6                                4144 N. Central Expressway
                                  Suite 1200
 7                                Dallas, Texas  74204
                                  carolynhillatty@gmail
 8                                (214) 418-3867

 9
     FOR THE DEFENDANT,           MR. NATHAN ROGERS
10   JIMMY HATCHETT:              Burleson Pate & Gibson
                                  Founders Square
11                                900 Jackson Street
                                  Suite 330
12                                Dallas, Texas  75202
                                  nrogers@bp-g.com
13                                (214) 871-4900

14
                                  MR. PAUL TALIAFERRO LUND
15                                Burleson Pate & Gibson
                                  Founders Square
16                                900 Jackson Street
                                  Suite 330
17                                Dallas, Texas  75202
                                  plund@bp-g.com
18                                (214) 871-4900

19
     COURT REPORTER:              MR. TODD ANDERSON, RMR, CRR
20                                United States Court Reporter
                                  1100 Commerce St., Rm. 1625
21                                Dallas, Texas  75242
                                  (214) 753-2170
22

23

24       Proceedings reported by mechanical stenography and

25   transcript produced by computer.
```

1          SUPPRESSION HEARING - SEPTEMBER 12, 2018

2                  P R O C E E D I N G S

3          THE COURT:  Okay.  This is United States of America

4    versus Treveon Dominguez Anderson, Cause Number

5    3:14-CR-00340-K.  And it's also United States of America versus

6    Jimmy Hatchett, but the motion to suppress is on the Anderson

7    case.

8          On both cases, Mr. Robinson and Mr. Junker and

9    Mr. de la Garza -- oh, Mr. Junker, you're going to do it by

10   yourself today?

11         MR. JUNKER:  Yes, Your Honor.  I'm afraid that

12   Mr. de la Garza is out of the country.

13         THE COURT:  Well, we're glad to have you back.  And

14   it looks like Mr. Robinson is sitting on the other side of the

15   bar, so I will not be able to address him, it looks like.  That

16   will be fine.

17         And on the other side we've got Mr. E.X. Martin,

18   Ms. Carolyn Hill.  And y'all are ready?

19         MS. HILL:  We're ready, Your Honor.

20         MR. MARTIN:  Judge --

21         THE COURT:  Let me look at a couple of things.

22         MR. MARTIN:  Judge Kinkeade?

23         THE COURT:  Yes, sir.

24         MR. MARTIN:  If I may, there's a new attorney here,

25   Christie Merchant, who's been helping me.  And you recently

1    appointed her on a case.

2              THE COURT:  Well, that's good.  That's good.  Help

3    Mr. Martin in every way that you are able.

4              MR. MARTIN:  She has been.

5              THE COURT:  Where did you go to law school?

6              MS. MERCHANT:  University of Tulsa.

7              THE COURT:  That's great.  One of my son's best

8    friends that lived with him at Baylor went to Tulsa, and he's

9    one of the lawyers for the City of Dallas, and loved the school

10   and loved Tulsa.  So great.  Good to have you.

11             MS. MERCHANT:  Thank you, Your Honor.

12             THE COURT:  Okay.

13             All right.  And then for Mr. Hatchett, Mr. Rogers and

14   Mr. Lund?

15             MR. LUND:  Yes, Your Honor.

16             MR. ROGERS:  Yes, Your Honor.

17             THE COURT:  There y'all are.  And y'all are ready on

18   that issue?

19             Y'all just have the issue of an unopposed motion for

20   disclosure of promises to Government witnesses.

21             There's no objections by you, is there, Mr. Junker?

22             MR. JUNKER:  No, Your Honor.  We are going to request

23   a protective order.  I meant to have one ready, and I

24   apologize, but the day got --

25             THE COURT:  That's fine.  I'm glad to issue a

```
 1    protective order.  Just get it down here.

 2              MR. JUNKER:  Thank you.

 3              THE COURT:  But I'll grant that if you'll get that to

 4    me, okay?

 5              All right.  And let's see.  And then the criminal

 6    records of witnesses, and you want a -- you don't object, but

 7    you want a protective order on that, too, right?

 8              MR. JUNKER:  Yes, Your Honor, if you will, please.

 9              THE COURT:  I'll do that also, so get that to me.

10    Both sides look at that language and then get it to me.

11              All right.  So what else?  Let's see.  What else?

12              Do we have anything else on Mr. Hatchett?

13              MR. LUND:  Yes, Your Honor.  There's an outstanding

14    motion in limine.  I'm not sure if the Court wants to take that

15    up today.

16              THE COURT:  Oh, yes, I do have that.  I'm sorry.

17              MR. LUND:  And there's also a few other brief things

18    that I think might wait until after the suppression issue,

19    which shouldn't take too long.

20              THE COURT:  That will be fine.

21              MR. LUND:  Thank you, Your Honor.

22              THE COURT:  And on your motion in limine -- just a

23    second.  Let me see.

24              (Pause)

25              THE COURT:  Okay.  I'll come back and look at all of
```

1    that with both of y'all later on.  I think I can address that a

2    little bit later.

3            Okay.  And then let's see.  On the motion to

4    suppress, I think we're -- and what you're trying to suppress

5    is under that Carpenter case, the tracking under the cell

6    phone.  Is that what we're looking at?

7            MR. MARTIN:  Yes, sir.  Yes, Your Honor.

8            THE COURT:  Where are you?

9            All right.  Mr. Martin, are you going to sit over

10   here on the prosecution side?

11           MR. MARTIN:  Well, Carolyn's purses -- she's got her

12   purses in the chair, so --

13           THE COURT:  Well --

14           MR. JUNKER:  Judge, I can move down a little bit if

15   he wants part of this table.

16           THE COURT:  I just never had the defense lawyer sit

17   over there with the Government.

18           I mean, Ms. Hill?

19           MR. MARTIN:  Those are the two exhibits right there.

20           THE COURT:  I'm sorry, Ms. Hill.  I'm giving you a

21   hard time.

22           MS. HILL:  That's all right, Judge.

23           THE COURT:  Okay.  All right.  So I'm ready to hear

24   any evidence that y'all have got.

25           There's also a motion for continuance that I'll

1    address after the suppression.

2          Okay.  We filed today a superseding indictment?

3    That's right?

4          MR. JUNKER:  Yes, Your Honor.  That's correct.  I

5    don't know that it's hit the ECF system yet, though.

6          MS. HILL:  It did.

7          MR. JUNKER:  It did?  Okay.  Good.

8          THE COURT:  It did?

9          Okay.  Have y'all seen that?

10         MR. MARTIN:  Yes.

11         THE COURT:  And you know what each of y'all -- you

12   know what your clients -- what the additions are?

13         MR. ROGERS:  Yes, Your Honor.

14         THE COURT:  And do you want to plead on those, the

15   additional count?  Let's see.  It just added that one count or

16   two counts?

17         (Pause)

18         THE COURT:  Oh, okay.  Okay.  You removed that -- the

19   one count, right?

20         MR. JUNKER:  We removed a 924(c), Your Honor, and we

21   added a kidnapping count, so that -- because there's two

22   kidnapping victims, and the unit of prosecution is each victim.

23   Originally, they were lumped into one count.  And I think there

24   were some wording changes just to make certain we're compliant

25   with the law.

1          THE COURT:  Okay.  And how do you-all wish to plead

2     on additional -- so you already had one kidnapping count,

3     correct?

4          MR. JUNKER:  Yes, Your Honor.  We added a second one

5     and divided it up so it was one for each victim.

6          THE COURT:  A.S. and V.P.  Which one did you add,

7     A.S. or V.P.?

8          MR. JUNKER:  I think originally, Judge, they were

9     both in one count.  We've not separated them out.

10         THE COURT:  Oh, you just separated them out?

11         MR. JUNKER:  Yeah.  So one is now A.S., and the other

12    one is V.P.

13         THE COURT:  Okay.  And you already had the forfeiture

14    count, correct?

15         MR. JUNKER:  Yes.

16         THE COURT:  Okay.  So how does your count wish to

17    plead, Mr. Martin and Ms. Hill?

18         MR. MARTIN:  I've discussed it with him, and he

19    pleads not guilty, Your Honor.

20         THE COURT:  All right.  Is that correct, sir?

21         DEFENDANT ANDERSON:  Yes, sir.

22         THE COURT:  Okay.

23         MR. ROGERS:  Your Honor, discussing it with

24    Mr. Hatchett, we also plead not guilty.

25         THE COURT:  Okay.  And you don't demand -- either of

1    you demand me to read the whole indictment to you, that sort of

2    thing?

3              MR. ROGERS:  Waive formal arraignment.

4              MR. MARTIN:  Waive formal arraignment.

5              THE COURT:  Okay.  All right.  So here we go.

6              All right.  I'm ready.  Whatever you've got.

7              MR. MARTIN:  May it please the Court.

8              THE COURT:  Yes, sir.

9              MR. MARTIN:  I just have a brief PowerPoint just to

10   put out some issues before the Court so you can make a

11   decision.

12             I did file a motion to suppress on behalf of

13   Mr. Anderson.

14             Quite frankly, working on this, I dealt with cell

15   site information before, and I was really pleased to see the

16   Supreme Court in Carpenter, when it came out.  And I read it,

17   and I obviously liked it because it seemed -- I liked their

18   reasoning on they need a Fourth Amendment search warrant to

19   obtain this type of information.  And it was Judge Roberts that

20   wrote the opinion and delivered it.

21             And I just made some notes.  I did not anticipate

22   originally the good faith becoming involved in this.  Honestly,

23   I thought it was a slam dunk, but pretty quick the good-faith

24   issue came up in support of the prosecution.

25             Anyway, I filed a motion to suppress originally.  The

 1    Court may have seen another document.

 2            I did a timeline for the Court's convenience.  It

 3    shows the date of the robbery, when Mr. Anderson was arrested

 4    on an unrelated case.  And that's how the cell phone -- that's

 5    how they obtained a cell phone number, that 281.

 6            THE COURT:  Have we got a pointer, Ronnie?

 7            MR. MARTIN:  That's about all the pointing I'm going

 8    to do.

 9            THE COURT:  Oh, okay.  Just in case.

10            (Pause)

11            MR. MARTIN:  Hold on.  That's when they filed their

12    application, I believe, in front of Judge Stickney to -- under

13    the Stored Communications Act.

14            There was an indictment.  Mr. Anderson was arrested

15    and then indicted and charged with this offense.  This is just

16    the timeline in this.

17            This is the Carpenter opinion.  I've touched on that

18    briefly.  What I did list here is Justice Roberts, Ginsburg,

19    Breyer, Sotomayor, and Kagan on the majority, and then there

20    was four judges on the dissenting.

21            Carpenter v. United States held that a search warrant

22    supported by probable cause is required for police to access

23    cell site location information, CSLI -- you may see this

24    further in this PowerPoint.  In other words, to gather this

25    data they need a search warrant compatible with the Fourth

1  Amendment as opposed to an order under the Stored

2  Communications Act.  That's the deal.

3         In this case, I'm saying that the Government did not

4  obtain a warrant supported by probable cause.  They did comply

5  with the Stored Communications Act, but it's a different

6  standard that Justice Roberts laid out.

7         This is just a screen clip of the application they

8  filed before Judge Stickney.  And then later he granted it, and

9  it was this order that they obtained the information from the

10  cell site provider.

11         There's actually two, but they got the information.

12         And just so the Court -- this is something --

13  somewhat -- I forgot that there's a delay on this.  This is

14  some -- when you obtain this information, it really kind of

15  comes to you in a spreadsheet-type formation, then they put it

16  in another program, and you can -- this is just a different

17  interface, but it's just this data and how it's sorted, and

18  that's where you start.

19         But you can ultimately wind up -- and this isn't from

20  this case.  I just got this graphic to show you.  But

21  ultimately what you can do is you can trace a person's

22  movement.  And Justice Roberts kind of discusses that and a

23  person's right to privacy pertaining to it, literally being

24  able to track people wherever they are.  And that's part of the

25  reason why he required a Fourth Amendment search warrant.

1          This is the Government's response to my motion to

2     suppress.  And, of course, I cite Carpenter and he does, too.

3          And what came out of this in their motion is that

4     they say that they acted in good faith.  And I can understand

5     that argument, but I question its total application to this

6     particular case.

7          The reason for that is -- one thing I learned working

8     on this case is that this has been somewhat of a hot issue.  It

9     hasn't come down from the Supreme Court, but there are other

10    appellate courts that -- well, magistrate courts, sitting

11    district judges, and then circuit courts have been ruling on

12    this issue.

13         And one thing that I thought was somewhat surprising

14    is that two of these cases that I have got in this PowerPoint,

15    the Government files the application with the magistrate judge.

16    In these two cases the magistrate judge says no, this isn't

17    sufficient.

18         The Government appeals it to the District Judge, and

19    the District Judge rules with the magistrates that they didn't

20    meet the standard, in other words, it needed to be a Fourth

21    Amendment search warrant.

22         Am I making you follow this?

23         THE COURT:  Yes.  Yes.

24         MR. MARTIN:  Okay.  And there's two of these cases,

25    one from the Fifth Circuit, one from the Third Circuit.

 1                The one from the Third Circuit goes up to the Third

 2    Circuit appellate court, and they discuss at length there's a

 3    probable cause issue and reasonable suspicion.  And the Third

 4    Circuit actually sends it back down to the magistrate court.

 5                The Fifth Circuit ruled on it and said that they --

 6    that the Stored Communications Act, the provisions are

 7    sufficient to obtain an order.

 8                You kind of see what I'm saying?

 9                THE COURT:  Yes.

10                MR. MARTIN:  So then my point on this was that this

11    issue has been out there.  It's in the public.  And I was kind

12    of surprised that there's so much activity about it prior to

13    the Carpenter case.  I never recall me filing something with

14    the magistrate and they overruling it or whatever and then --

15    anyway, moving on.

16                This is one of the cases I'm talking about.  This is

17    the Third Circuit case here.  United States District Court for

18    the Western District of Pennsylvania affirmed a magistrate

19    judge's order denying the Government's application.  These are

20    just some of the other things.

21                THE COURT:  All right.

22                MR. MARTIN:  In conclusion, I understand the argument

23    about good faith, but one particular difference in this case

24    is, in the Government's motion responding to my motion to

25    suppress, they list this case, Jesus Chavez.

 1            And in that case, that's another case where Stored

 2   Communications Act was used to get cell data and kind of link

 3   this Chavez to the offense.

 4            But the Court in that case, the District Court,

 5   said -- or in the bottom line here, the District Court

 6   concluded this was not a close case.  "Any marginal benefit

 7   Chavez may have derived from suppression of the cell phone

 8   location data would not have altered the outcome of the trial."

 9            And the reason why I put this in here is the Anderson

10   case is different than that.  There are no eyewitnesses that

11   say that he participated in this robbery.  And it is not -- it

12   would be a close case for sure if the cell site -- well, the

13   cell location, the tracking, was held to be illegally seized or

14   not available to the prosecution for the trial of this case.

15   That's -- that's the difference.  And I --

16            THE COURT:  That's what put him at the site of the

17   robbery?

18            MR. MARTIN:  Right.  Whereas they said in this case

19   it wasn't a close case, so really the cell site information was

20   not that important.  But in this case, to my client, it is very

21   important.

22            THE COURT:  Okay.

23            MR. MARTIN:  And we would ask the Court to consider

24   that.

25            THE COURT:  Okay.

1          MR. MARTIN:  And that's all I have.

2          THE COURT:  Thank you.

3          MR. MARTIN:  You bet.

4          MR. JUNKER:  May it please the Court?

5          THE COURT:  Yes, sir, Mr. Junker.

6          MR. JUNKER:  Your Honor, I respectfully disagree with

7    learned counsel on one point.  He made a statement towards the

8    end that there were no eyewitnesses who would say that Anderson

9    participated in the robbery and were at the robbery.  That is

10   not the case in this instance in the sense that other

11   participants in the robbery, many of them have pled, are

12   expected to testify at trial and identify the Defendant as

13   having been present and participated in the robbery and not

14   just that, you know, they saw him in the jewelry store with the

15   clothing and the mask, et cetera.  It's shown before and after

16   so they can easily identify him.

17          So we think that this is still -- I don't think it's

18   necessarily relevant to the legal argument, but overall to any

19   extent that it is, this case is closer to Chavez than -- than

20   was indicated.

21          Your Honor, counsel is correct that we do intend to

22   argue good faith, good faith because the exclusionary rule was

23   designed to stop law enforcement conduct that is illegal.  It's

24   not meant to punish law enforcement when they follow the law as

25   it existed at the time and followed it scrupulously.

 1            In this case, we sought a 2703(d) order from a court

 2    here with an application, a proper application.  I have a

 3    certified copy of both the application and the order.

 4            I would offer it as evidence for purposes of the

 5    suppression hearing, but it is under seal, Your Honor, and I

 6    would ask that at least the application remain that way.  I

 7    have no objection to the order itself being unsealed, but the

 8    application obviously references the other individuals.

 9            THE COURT:  How do you have those marked, as

10    State's -- I mean Government's exhibit?

11            MR. JUNKER:  Government's Exhibit 1.

12            THE COURT:  Okay.  And any objection?

13            MR. MARTIN:  No objection.

14            THE COURT:  Then it's admitted for purposes of the

15    hearing.

16            Do you want to keep it sealed?

17            MR. JUNKER:  As a sealed exhibit, because it also

18    includes the application, Your Honor.

19            THE COURT:  Okay.  Then I will do that.  All right.

20            MR. JUNKER:  Thank you, Your Honor.

21            But, again, in this circumstance, to punish law

22    enforcement by suppressing this evidence would not be punishing

23    law enforcement for abrogating the law.  They followed the law.

24    They followed it correctly.

25            It would be nothing more than a bonus to the

1    Defendant rather than a proper -- or the Government at least

2    would submit a proper application of the exclusionary rule to

3    prevent future police misconduct, because there was no police

4    misconduct here.  They followed the law as it existed at the

5    time, and they followed it properly.

6              And, Your Honor, I wanted to mention because there

7    have been other cases I found since we submitted our response

8    to the Court.  I think originally I told the Court that the

9    Fourth and the Eleventh circuits had already found good faith

10   applied after Carpenter.  I also indicated that the Sixth

11   Circuit already had a case pre-Carpenter that indicated it

12   would go the same way.  So even the Carpenter case itself on

13   remand likely will end up with a good-faith argument.

14             But since that time, the Second Circuit, the Third

15   Circuit, and the Seventh Circuit have come down with cases.

16   And I -- just briefly, the Second Circuit case is U.S. versus

17   Zodhi -- I'm going to slaughter this name, Your Honor.  It's

18   spelled Z-O-D-H-I-A-T-E-S.  Only the Westlaw cite is available.

19   It's 2018 Westlaw 397700.

20             Third Circuit -- let's see.  I'm sorry.  The Seventh

21   Circuit case is U.S. v. Carpenter.  Again, only Westlaw cite is

22   available.  It's 2018 Westlaw 4042631.

23             The others, I believe, are cited in the brief.

24             But, essentially, Your Honor, the majority of the

25   circuits have now found that good faith applies in this

```
 1    circumstance and that the evidence should not be suppressed.

 2              And the Fifth Circuit itself, as I noted in our

 3    response, has already indicated that it will go the same way.

 4              In fact, in advance of Carpenter, anticipating

 5    Carpenter, there was an argument made before the Fifth Circuit

 6    on prospective cell site information slightly similar.  And in

 7    that case, the Fifth Circuit found that the good-faith

 8    exception would apply and that there was no need to wait for

 9    the decision in the Carpenter decision.

10              And I believe, Your Honor, that that case -- that

11    case is also cited in the brief.

12              THE COURT:  And what was that one, that last case?

13              MR. JUNKER:  Your Honor, I'm trying to find it in my

14    notes right now.  Give me just one moment.

15              (Pause)

16              MR. JUNKER:  I believe that's going to be the Wallace

17    case, Your Honor.  885 Federal Series 3d. 806.  Yes.

18              And prior to that, the case that counsel already

19    referenced, the United States versus Historical Cell Site Data,

20    the Fifth Circuit -- and that's 724 Federal Series 3d. 600.

21    While the lower court may have found that -- had ruled against

22    the Government in that case, when it went to the Fifth Circuit,

23    the Fifth Circuit found that the Government acted properly.

24    And that's what the Government relied on in seeking the 2703(d)

25    order for the information in this case.
```

```
 1            THE COURT:  Okay.
 2            MR. JUNKER:  That's all I have, Your Honor, unless
 3   the Court has any questions.
 4            THE COURT:  No.  All right.
 5            MR. MARTIN:  Judge, can I say one thing?
 6            THE COURT:  Sure.
 7            Let me ask him something.
 8            (Off the record discussion between counsel)
 9            MR. MARTIN:  I should have had this in my PowerPoint,
10   but he mentions the witnesses that allegedly place Anderson at
11   the scene of the offense.  They are also in the indictment and
12   probably hoping to get a 5K1.  That's what I think the
13   difference is.
14            THE COURT:  Okay.  So they're co-defendants?
15            MR. MARTIN:  Right.  And I should have had it in the
16   deal, but I skipped it.
17            THE COURT:  No, no, no.  You said it, and I get it.
18            All right.  Any other argument that either side wants
19   to make?
20            MR. MARTIN:  The learned Court will understand the
21   evidence.
22            THE COURT:  Well, they're not here, but I'm here, and
23   I'll rule.  You're right.
24            How about the Government?
25            MR. JUNKER:  No, Your Honor.  Thank you.
```

1          THE COURT:  Okay.  And there's no witnesses, and so

2    this -- both sides have rested and closed.  This is a legal

3    argument with regard to this.

4          I do think based upon -- I think, Mr. Martin, you

5    were right in the Carpenter case, but I do think -- and I think

6    it's right on -- that as a result of the circuits addressing

7    the good-faith exception, I think that will apply here.  And I

8    think that's exactly what will happen.  So I'm going to

9    overrule your motion to suppress based upon that good faith.

10         And it's pretty close to the Chavez case.  It may not

11   be -- I don't know if those eyewitnesss in Chavez were

12   co-defendants or not.  I would have to go back and look at that

13   case again.  I don't know.  But either way, there are witnesses

14   there.

15         But that aside, I think the good-faith exception

16   applies, and so that leaves me with that.  I'm going to

17   overrule your -- deny your motion to suppress, excuse me.

18         And I think we've got this -- you've got a motion to

19   continue, I believe, that I have that the Government has

20   opposed.

21         MR. JUNKER:  Your Honor, if I may.

22         THE COURT:  Sure.

23         MR. JUNKER:  I asked Mr. Martin to list the

24   Government as opposed because I did not have an opportunity at

25   that time when he spoke with me to check on the availability of

1    my witnesses.

2            We have since done that.  And if it's only a two-week

3    continuance, we're no longer opposed.  In fact, I have one

4    witness that will be in Florida during the trial that we were

5    going to have to go through all kinds of gymnastics with to try

6    to work it out so that he could be in both places at once, so

7    to speak.

8            THE COURT:  So this will actually alleviate that

9    problem?

10           MR. JUNKER:  Yes, Your Honor.

11           THE COURT:  Okay.  Well --

12           MR. MARTIN:  And, Judge, may I?

13           THE COURT:  Yes, sir.

14           MR. MARTIN:  I did that motion in a rush because I

15   got some additional evidence, and that's why I filed the

16   motion.  And I know -- and I was rushed when I talked to them,

17   and they said opposed, but I respect their position.

18           THE COURT:  Okay.  Well, I'm going to grant your

19   motion for continuance, and we'll try to work it in the next

20   couple of weeks, so both sides will be -- can work with you on

21   the date.  And you get with Ronnie on that.

22           I'm going to wait and rule on the motion in limine

23   until we get to trial unless y'all have got some reason you

24   think I need to do it right now.

25           MR. ROGERS:  No, Your Honor, we don't.

```
1              THE COURT:  Okay.  That's great.
2              Okay.  Anything else?
3              MR. JUNKER:  Yes, Your Honor.
4              If we are -- if there is going to be continuance of
5   trial, I would ask that the deadlines for both parties for
6   trial materials, witness lists, et cetera, be moved back by a
7   similar amount of time.
8              THE COURT:  It will be.
9              MR. JUNKER:  Thank you.
10             THE COURT:  It absolutely will be.  I'm glad you put
11  that.  I just assumed that.
12             Mr. Rogers, you don't have any objection to that, do
13  you?
14             MR. ROGERS:  I don't, Your Honor, though there is one
15  motion I would like to make on the record for record purposes.
16             THE COURT:  Yes, sir.
17             MR. ROGERS:  Your Honor, I don't have any reason to
18  believe that the Government has not turned over everything it
19  has as far as Brady material, but I did for record purposes
20  want to make that motion today.
21             THE COURT:  You're asking for anything --
22             MR. ROGERS:  Any and all exculpatory --
23             THE COURT:  Exculpatory evidence.
24             Mr. Junker?
25             MR. JUNKER:  We have no objection to that, Your
```

1   Honor.  We've provided all appropriate material.  We will

2   continue to do so.  I think that as the Court is going to issue

3   a protective order that we will get additional material.  But,

4   yes, we will comply.

5           THE COURT:  Make sure you get those -- but I agree,

6   and so the Brady motion is granted.  So anything you've got

7   like that.

8           Anything else?

9           MR. ROGERS:  Will Your Honor specifically after

10   in-camera -- not in-camera review, but a review of the

11   Government's D&R material, we would ask the Court to grant us

12   the ability to review defendant -- co-defendants' PSR's for any

13   exculpatory information.

14           I believe the Government will oppose that.  If the

15   Court is not inclined to do that, we would ask for the Court to

16   review it for any exculpatory information at an in-camera

17   review.

18           MR. JUNKER:  We don't oppose an in-camera review,

19   Your Honor.

20           THE COURT:  I'll be glad to do that.

21           Okay.  I don't know -- do we have PSR's from them?

22   Okay.

23           MR. JUNKER:  We have, I believe, two defendants who

24   were sentenced, Your Honor.

25           THE COURT:  Oh, okay.  On the ones that have already

1    been sentenced.  That's right.

2            Okay.  Well, I'll be glad to do that and let you know

3    if there's anything in there.

4            Anything else?

5            MR. LUND:  Your Honor, the one final issue, which is

6    the Government has indicated to the defense that there are

7    going to be several co-defendants who may be testifying, and

8    they have not identified -- they have not identified who those

9    people are at this time, which we understand; however, they've

10   at least identified them as co-defendants in the case.

11           There is, in addition, one other individual who

12   apparently has contacted the U.S. Attorney's Office on his own

13   volition who is seeking to possibly offer evidence against

14   Mr. Hatchett at the trial.  The Government has, as of yet, not

15   identified who that person is.

16           I understand that their position is currently they

17   don't feel that they have to do that at this time, but we would

18   like -- in order to be able to investigate this individual, to

19   see if there is any material that could be exculpatory with

20   regards to his past, previous convictions, things along those

21   lines, we would like at least the Court to set a deadline by

22   which the Government would be required to identify that

23   individual to the defense so that we may make a full

24   investigation prior to trial.

25           MR. JUNKER:  Your Honor, we have not made a final

1    decision whether or not that individual will be testifying.

2    First of all, his summary is correct.  It is somebody that is

3    not --

4              THE COURT:  Not a co-defendant?

5              MR. JUNKER:  Yes.

6              We have not made a final decision whether or not we

7    will be calling that person to testify.  I personally do not

8    have a problem if it were under a protective order to disclose

9    the name in advance of trial to defense counsel; but as far as

10   full disclosure to the defense, I would ask that that not occur

11   until we've made a decision whether or not we'll be calling

12   them to testify.

13             THE COURT:  Well, I don't want that decision to be

14   five minutes before the trial.

15             MR. JUNKER:  I understand, Judge.

16             THE COURT:  So when are you going to be ready to do

17   that?

18             MR. JUNKER:  When we have to file our witness list,

19   Your Honor.

20             THE COURT:  Does that give you enough time or no?

21             MR. LUND:  Your Honor, my understanding is the

22   deadline for the witness list would be at least two weeks prior

23   to the commencement of trial; is that correct?

24             THE COURT:  Yes.

25             MR. LUND:  That would be enough time, Your Honor.

1    Thank you.

2          THE COURT:  Okay.  All right.  That's fine.

3          Anything else?

4          MR. ROGERS:  No, Your Honor.

5          MR. JUNKER:  Your Honor, we've discussed this

6    previously.  We've -- the Government has served a request for

7    notice of alibi defense, and counsel for Mr. Hatchett responded

8    to that.

9          The scope of the Government's request, however, is

10   not just for the two minutes of the robbery in the Tilak

11   Jewelry store up here, but it also includes the traveling up

12   from Houston and the traveling back.

13         And so they have given us notice for just the time

14   period of the robbery.  We're asking for notice of the full

15   time period.

16         Mr. Rogers has indicated to me that he thinks that

17   the notice they have given is sufficient, but just since we're

18   before the Court right now, I wanted to bring that up in

19   case --

20         THE COURT:  You want to make that motion?

21         MR. JUNKER:  Yes.

22         THE COURT:  Okay.  What about that, Mr. Rogers?

23         MR. ROGERS:  Your Honor, I believe the indictment

24   alleges the conspiracy lasts -- did you just say that -- from

25   midnight on Sunday until 6:00 p.m. or 8:00 p.m. on Sunday.  Our

 1   alibi places Mr. Hatchett in Houston during the time of the

 2   robbery.

 3          We believe it's impossible for him to have traveled

 4   as part of the conspiracy to Dallas while he's also in Houston

 5   during the morning, during the time of the robbery, and then

 6   make his way back to Dallas -- make his way back from Dallas if

 7   he's in Houston at the time the robbery occurs.

 8          THE COURT:  Well, I mean, it's not like Houston and

 9   Dallas are that far apart.  We've got planes and -- we don't

10   have a train yet.  Certainly by car, get back and forth.

11   That's going to depend on the timing, I guess, really, of

12   whether -- what you could or couldn't do and the timing.

13          I don't know.  I don't know enough about the

14   individual facts of whether you could rush right back to

15   Houston or not.  I don't know.  I don't know enough because

16   y'all know the facts better than I do.  I have what's in the

17   indictment.

18          So what were you going to say, Mr. Junker?

19          MR. JUNKER:  Your Honor, I was only going to add that

20   part of the reason for the notice of alibi is to give the

21   Government sufficient time to investigate and give a further

22   notice that we have to give back to the defense regarding

23   witnesses we may call in response.

24          And what I was going to say is that part of the

25   reason is, again, so that the Government can investigate it.

1    And if Mr. Hatchett is claiming not just that he was at church

2    at the time of the robbery but after church he went to Flo's

3    Diner or something like that, we would then be able to check

4    that out as well.

5            So by compressing the amount of notice that they're

6    giving us, they're actually hamstringing the Government as far

7    as its ability to investigate and respond to the alibi defense.

8            THE COURT:  So what are you asking for?

9            MR. JUNKER:  I'm asking for notice to the Government

10   as to where he was for the full time period that is charged in

11   the indictment.

12           THE COURT:  What does that mean?

13           MR. JUNKER:  Well, the travel up to -- up from --

14           THE COURT:  Yeah.  But, I mean, if he's ever been to

15   Dallas or if he's ever been to Irving?

16           MR. JUNKER:  No, Your Honor.  It means the entire

17   period of the conspiracy for the robbery, which includes the

18   travel time up to commit the robbery and the travel time back.

19           We're not just talking about the two minutes of the

20   robbery, because the robbery was performed and executed in

21   under two minutes.

22           THE COURT:  Okay.  Mr. Rogers?

23           MR. ROGERS:  Your Honor, our -- any potential alibi

24   witness would place Mr. Hatchett in Houston on Sunday morning

25   at church.

```
 1              THE COURT:  Would cover all that same time period?
 2              MR. ROGERS:  That would cover -- not the entire time
 3    period, Your Honor, not from midnight until 6:00 that
 4    afternoon, but it would place him in Houston at the time of the
 5    robbery, which in our view would make it impossible for him to
 6    be at church in Houston and at Tilak Jewelers in Irving during
 7    the corresponding time period.
 8              THE COURT:  I'll think about it and how much that
 9    covers.  It seems to me that if his alibi is "I wasn't there,"
10    I'm not sure I get where -- why you need the rest of it.
11              MR. JUNKER:  Your Honor, his alibi is "I was in
12    church."  We've already looked into that part of it.  But he
13    wasn't just at church.  He was obviously either at home or went
14    someplace after church.
15              Houston is a very big place.  To basically say, "I
16    was in Houston.  Go fish," that's much more difficult than
17    saying, "I was in church, and then I went to my home for the
18    rest of the afternoon," or, "I went to -- out with friends to
19    dinner at XYZ location."
20              Those are very discrete locations that the Government
21    can then follow up on and see what we can find as far as
22    responsive evidence.
23              THE COURT:  I don't know.  I'm probably not going to
24    do that, but I'll think about it.  I will think about it at
25    this point.
```

1          Okay.  Anything else?

2          MR. ROGERS:  Not at this time, Judge.

3          THE COURT:  Anything else from the Government?

4          MR. JUNKER:  No, Your Honor.  Thank you.

5          THE COURT:  All right.  Off the record.

6          (Discussion off the record)

7          (Hearing adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           INDEX

2    ARGUMENT:  Mr. Martin................................. 9, 19

3    ARGUMENT:  Mr. Junker.................................. 15

4    Court's ruling........................................ 20

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        I, TODD ANDERSON, United States Court Reporter for the

2   United States District Court in and for the Northern District

3   of Texas, Dallas Division, hereby certify that the above and

4   foregoing contains a true and correct transcription of the

5   proceedings in the above entitled and numbered cause.

6        WITNESS MY HAND on this 10th day of July, 2019.

7

8

9
                              /s/Todd Anderson
10                            TODD ANDERSON, RMR, CRR
                              United States Court Reporter
11                            1100 Commerce St., Rm. 1625
                              Dallas, Texas  75242
12                            (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25