```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE NORTHERN DISTRICT OF TEXAS

 3                              DALLAS DIVISION

 4
       UNITED STATES OF AMERICA,      )        3:14-CR-340-K
 5                    Government,      )
                                      )
 6                                    )
       VS.                            )        DALLAS, TEXAS
 7                                    )
                                      )
 8     TREVEON DOMINIQUE ANDERSON     )
       and JIMMY HATCHETT,            )
 9                    Defendants.     )        October 22, 2018

10

11                    TRANSCRIPT OF PRETRIAL HEARING

12                  BEFORE THE HONORABLE ED KINKEADE

13                    UNITED STATES DISTRICT JUDGE

14

15     A P P E A R A N C E S:

16

17     FOR THE GOVERNMENT:          MR. JOHN J. DE LA GARZA
                                    UNITED STATES DEPARTMENT OF JUSTICE
18                                  NORTHERN DISTRICT OF TEXAS
                                    U.S. Courthouse, Third Floor
19                                  1100 Commerce Street
                                    Dallas, Texas  75242
20                                  john.delagarza@usdoj.gov
                                    (214) 659-8682
21
                                    MR. WALT M. JUNKER
22                                  UNITED STATES DEPARTMENT OF JUSTICE
                                    NORTHERN DISTRICT OF TEXAS
23                                  U.S. Courthouse, Third Floor
                                    1100 Commerce Street
24                                  Dallas, Texas  75242
                                    walt.junker@usdoj.gov
25                                  (214) 659-8630
```

```
 1   FOR THE DEFENDANT,           MR. E.X. MARTIN
     TREVEON DOMINIQUE ANDERSON:  Law Offices of E.X. Martin
 2                                8828 Greenville Avenue
                                  Dallas, Texas  75243
 3                                exmartin@airmail.net
                                  (214) 343-7400
 4

 5                                MS. CAROLYN A. HILL
                                  Attorney at Law
 6                                4144 N. Central Expressway
                                  Suite 1200
 7                                Dallas, Texas  74204
                                  carolynhillatty@gmail
 8                                (214) 418-3867

 9
     FOR THE DEFENDANT,           MR. NATHAN ROGERS
10   JIMMY HATCHETT:              Burleson Pate & Gibson
                                  Founders Square
11                                900 Jackson Street
                                  Suite 330
12                                Dallas, Texas  75202
                                  nrogers@bp-g.com
13                                (214) 871-4900

14
                                  MR. PAUL TALIAFERRO LUND
15                                Burleson Pate & Gibson
                                  Founders Square
16                                900 Jackson Street
                                  Suite 330
17                                Dallas, Texas  75202
                                  plund@bp-g.com
18                                (214) 871-4900

19
     COURT REPORTER:              MR. TODD ANDERSON, RMR, CRR
20                                United States Court Reporter
                                  1100 Commerce St., Rm. 1625
21                                Dallas, Texas  75242
                                  (214) 753-2170
22

23

24        Proceedings reported by mechanical stenography and

25   transcript produced by computer.
```

```
 1              PRETRIAL HEARING - OCTOBER 22, 2018
 2                    P R O C E E D I N G S
 3          THE COURT:  Okay.  We've got the case of United
 4  States of America versus Treveon Dominique Anderson and Jimmy
 5  Hatchett, Cause Number 3:14-CR-00340-K and multiple defendants
 6  in that.  This is Number 9 and 13.
 7          Set for trial today.  We're about to begin.
 8          Mr. Walt Junker, Mr. Jason Ibrahim, and
 9  Mr. John de la Garza are all here for the Government, and y'all
10  are ready?
11          MR. JUNKER:  The Government is ready, Your Honor.
12          THE COURT:  All right.  And Mr. E.X. Martin is here
13  for Mr. Anderson, and you're ready?
14          MR. MARTIN:  Yes, Your Honor, along with Carolyn
15  Hill.
16          THE COURT:  And also Ms. Hill is here with you?
17          MR. MARTIN:  Yes, she's here.
18          MS. HILL:  We're ready, Your Honor.
19          THE COURT:  And then Mr. Rogers and Mr. Lund are here
20  for Mr. Hatchett, and y'all are ready?
21          MR. ROGERS:  Yes, Your Honor.
22          MR. LUND:  Yes, Your Honor.
23          THE COURT:  Okay.  Great.
24          Let's go over these motions in limine that I've got.
25  I've got both the motions and the response.
```

1          The Government wants me to deny a number of these.

2     Let me go over those.

3          So both sides agree to Number 1, so I grant that.

4          And then motive or state of mind.  I'm granting

5     Number 2.

6          Number 3.  I grant Number 3.

7          Scientific expert testimony.

8          Help me understand, Mr. Rogers, what you're talking

9     about.

10         Oh, Mr. Lund, you're going to do it?  Okay.

11         MR. LUND:  If I may, Your Honor.

12         Having looked at the case substantially more since

13    this motion was filed, I now think that Number 4 is probably

14    irrelevant given the fact I don't believe there's any

15    scientific evidence that Defendant Hatchett is --

16         THE COURT:  Okay.  Well, I'm not granting that, then.

17    Okay.

18         And then Number 5.  So you're going to offer

19    statements but not through live witnesses.  Is that what you're

20    going to do, Mr. Junker?

21         MR. JUNKER:  No, Your Honor.  I think that we only

22    intend to call live witnesses, but what we would suggest for

23    this one is if the Court carry it with the trial.  We don't

24    think that a separate hearing is necessary to prove up

25    conspiracy, so that we have two trials in one.

 1            THE COURT:  Well, this was making reference maybe to

 2    some statements that -- not from live witnesses.  Man.

 3            MR. JUNKER:  Well, for example, Your Honor, in the

 4    conspiracy I could see one of our co-conspirators being called

 5    to testify and they had a meeting, I think the evidence will

 6    show, prior to coming up to Dallas where they discussed what

 7    each person was going to be doing.  That all goes to the

 8    knowledge of each person and their agreement, what they were

 9    agreeing to as part of the conspiracy.

10            THE COURT:  Okay.

11            MR. LUND:  And, Your Honor, again, there's a

12    difference between "We had a meeting, and we all agreed to

13    this" as opposed to "We had a meeting, and this individual

14    person said this, this, and this and said the Defendant's role

15    would be this and this."

16            To me there's a general and a more specific, and my

17    concern is through either a co-conspirator that they are

18    planning on calling or the case agent in particular saying what

19    he has heard during the course of the investigation or a

20    co-conspirator blurting out along the way in the midst of a

21    long answer something to the effect of this specific statement

22    was said by this other out-of-court witness.  And that's --

23    that's the reason for the issue, Judge.

24            THE COURT:  Made in front of him or not in front of

25    him?

```
 1              MR. LUND:  Either, frankly, because I believe the
 2    evidence will show there were two or three separate cars that
 3    went up from Houston to Dallas.  And off the top of my head,
 4    I'm not sure which co-conspirator they're going to be calling
 5    and which car he was in and if he's going to say something that
 6    was in another car.  So the answer is, Judge, I could foresee
 7    either, and I don't know.
 8              MR. JUNKER:  That's partly true, Judge, but what we
 9    are more focused on is, again, there were meetings down in
10    Houston where virtually everyone was present where they
11    discussed the fact, for example, "We're going to use a" --
12              THE COURT:  Okay.  There was a key little word there
13    that you said, "virtually."  That means either they are or they
14    aren't.
15              MR. JUNKER:  It's my understanding they all were
16    present.
17              THE COURT:  Well, you're going to have to make that
18    clear.
19              MR. JUNKER:  I understand.
20              THE COURT:  At the time.
21              MR. JUNKER:  Yes, through the questioning of the
22    witness.
23              THE COURT:  And if they're there, then I'll let it
24    in.  If they're not, they can't.  So it's not -- that word
25    "virtually" is a key word.
```

```
 1              MR. JUNKER:  I apologize, Your Honor.
 2              THE COURT:  And so if they're not there, don't --
 3    don't do it.  And I don't want to hear what the agent says
 4    somebody told him that somebody might have said at some other
 5    time and some other place.  I don't want to hear all that.
 6              MR. JUNKER:  I understand.
 7              THE COURT:  Okay.  So I'm going to deny that.
 8              And I'm assuming all of the motions apply.
 9              MR. JUNKER:  Yes.
10              THE COURT:  Why is this thing ringing?  Where's
11    Ronnie?  I don't know.  But, anyway, we'll get to it in a
12    minute.  We'll get that fixed.
13              Summary evidence.  You got some kind of chart or
14    something you're going to offer?
15              MR. JUNKER:  We do have summary charts, Your Honor.
16    They've been turned over to the defense along with the
17    underlying data.  It all pertains to phone records and cell
18    phone analysis -- cell tower analysis, rather.
19              MR. LUND:  Your Honor?
20              THE COURT:  Yes.
21              MR. LUND:  I think I might be able to make this one
22    easier.  At the time this was written we did not have those
23    charts.
24              THE COURT:  You've got them all now?
25              MR. LUND:  We've got them now.  I don't believe
```

1    there's a summary chart that the Government has told us about

2    that Defendant Hatchett is going to be objecting to.  I can't

3    speak for Defendant Anderson, but we're fine with what --

4               THE COURT:  Y'all have got them?

5               MR. MARTIN:  We're fine, yes.

6               THE COURT:  Okay.  All right.  Then I'm denying that.

7               I think that's it.  I think that's it.

8               Now, let's see.  The Government has got some motions?

9               MR. JUNKER:  Your Honor, I believe all the

10   Government's motions have been resolved.  They're unopposed

11   on -- there's two things that are unopposed and one that is

12   opposed.

13              THE COURT:  Okay.  Which one is opposed?

14              MR. JUNKER:  Okay.  The very first one is actually

15   kind of two motions in limine in one.  I apologize, Your Honor.

16   I should have separated it out.

17              But it's my understanding that as to Defendant

18   Hatchett there's no opposition to a motion in limine regarding

19   a post-arrest interview that he gave that was audio and

20   videotaped, that they don't oppose that.  But the first motion

21   also seeks to prevent them from offering the same thing we were

22   just discussing, hearsay testimony of non-testifying

23   co-conspirators, because we don't believe there's an exception

24   when offered by the other --

25              THE COURT:  Ronnie, this thing is ringing when

1    everybody talks.  Just sit here a minute and you'll hear it.

2                THE COURTROOM DEPUTY CLERK:  Okay.

3                MR. JUNKER:  And the last motion in limine just dealt

4    with approaching the bench before going into priors or

5    uncharged conduct of witnesses.

6                THE COURT:  And you don't --

7                MR. JUNKER:  I don't believe -- that's not opposed.

8                THE COURT:  They don't oppose that.

9                Okay.  Well, I'm granting the ones that are

10   unopposed, obviously.

11               MR. LUND:  Your Honor, actually, it is unopposed, but

12   I want to state something a little more clear --

13               THE COURT:  Okay.  Great.

14               MR. LUND:  -- than Mr. Junker made, if I may.

15               The agreement with regards to the post-arrest

16   interview of Mr. Hatchett is such that both the Government and

17   Defendant Hatchett, I believe Defendant Anderson, as far as I

18   know, have all agreed not to bring up in any way the fact that

19   there was a post-arrest interview or any of the statements that

20   were elicited from that interview.  And as long as the

21   Government is not going to bring it up, the defense is quite

22   all right not bringing it up.  And that's the agreement, is my

23   understanding, with Mr. Junker.

24               MR. JUNKER:  And there's only one exception to that,

25   which is booking information, for example, names, cellular

1    telephone number, address, that kind of stuff.

2            MR. LUND:  I agree with that exception, Judge.

3            THE COURT:  Okay.

4            MR. LUND:  But that's the agreement that's Number 1.

5            THE COURT:  Okay.  And if you're going to change that

6    or something changes, Mr. Junker, and you need to do that --

7            MR. JUNKER:  We would approach.

8            THE COURT:  -- just let me know and we'll approach,

9    okay?

10           So what about the Number 1?  Do we still have some

11   problem with Number 1, the Government's motion?

12           MR. JUNKER:  Your Honor, that might be better carried

13   with the trial, because I think that, as I understand it, after

14   talking with Mr. Lund this morning, his concern would be when

15   the case agent testifies.

16           Is that fair?

17           MR. LUND:  Yes.  That is my primary concern on that.

18           MR. JUNKER:  Okay.  And I think that we -- once we

19   have his direct testimony, I think we can -- it will be easier

20   to address this.

21           THE COURT:  Okay.

22           MR. JUNKER:  It may fall by the wayside.

23           THE COURT:  Okay.  So I'm not granting it.

24           MR. JUNKER:  Okay.

25           THE COURT:  Okay.  Anything else?

1          MR. LUND:  Your Honor, briefly, my understanding of

2    the Court's preference is that when a side is objecting during

3    the direct examination the Court prefers the attorney that is

4    doing the cross-examination to be the one that objects; is that

5    correct?

6          THE COURT:  It's not a preference.  That's just the

7    rule.

8          MR. LUND:  Apologies, Your Honor.  I want to make

9    sure that rule is invoked.  And speaking of rules, I want to

10   make sure --

11         THE COURT:  I mean, no, and I'm not going to have any

12   lawyers in the back of the courtroom that think they ought to

13   be objecting either.  So, you know, no.  Whoever -- that works

14   for both sides.  If you're going to question the witness,

15   you've got to make the objections.

16         MR. LUND:  Yes, Your Honor.

17         THE COURT:  So --

18         MR. LUND:  In addition, I would ask if we were going

19   to invoke the rule.  I believe the Government has agreed to it.

20         MR. JUNKER:  No objection.

21         THE COURT:  Okay.  Then the rule is invoked.

22         MR. LUND:  Thank you, Judge.

23         THE COURT:  Now, that does not mean because you've

24   got two sets of lawyers -- I mean lawyers for one defendant and

25   lawyers for the other defendant that you don't -- that they

1    can't make objections as they want for themselves.  It's not

2    that.  It's that Mr. Martin and Ms. Hill can't alternate back

3    and forth.  And, Mr. Lund, you and Mr. Rogers can't alternate

4    back and forth of who's questioning.  But, yeah, Mr. Martin can

5    make an objection, even though you're the one, you know,

6    questioning, whatever, because it affects his client.  So he

7    can do that.

8              Okay.  Anything else, Mr. Junker?

9              MR. JUNKER:  I just wanted to put on the record, Your

10   Honor, in particular regarding the co-conspirators, as well as

11   the other Government witnesses, we've instructed them not to

12   bring up any prior uncharged conduct, criminal convictions,

13   et cetera, unless they're asked a question that directly uses

14   the word "crime" or "jugging" or something like that.  We've

15   informed counsel of that.

16             MR. LUND:  We appreciate that, Judge.

17             THE COURT:  Okay.  Now, I'm going to do the voir

18   dire, but here's the way I do it.  I don't think -- y'all

19   picked juries with me before, but I've sort of done something a

20   little different recently, and that is this.  And y'all have

21   given me what questions you want to ask, and I'll ask the ones

22   that I think that are appropriate, and the ones that I don't, I

23   won't -- is that when anybody raises their hand, we'll talk to

24   them individually.  So I'll give you every chance when they

25   come up here to question them however you want to question

```
 1    them, and we'll do it that way.  That way there won't be
 2    somebody in the back of the Court, one of the prospective
 3    jurors, one of the venire persons start preaching and then
 4    affect everybody and we'd have to start all over again.  So
 5    this is my way of kind of preventing that.  And it will happen
 6    anyway.
 7            Sure as the world, somebody is going to stand up and
 8    go, "Let me just tell you, when I was in the Marines, I
 9    think" -- I don't want to hear that.  But I promise you, I
10    do -- I've sat through lots and lots of sermons, so I kind of
11    know when the preacher starts.  So I'll be ready and watching
12    them for that.
13            Okay.  Now, what are we doing on the IT part of it?
14    Have y'all worked that out?
15            Ms. Hill, are you doing y'all's, or is it all going
16    to go through the Government's experts?
17            MR. MARTIN:  If something comes up, I'll be happy to
18    do it.  Right now I don't have anything in particular to offer.
19            THE COURT:  That you'd have to worry about?
20            MR. MARTIN:  Correct.
21            THE COURT:  Okay.  And y'all, I know, know what
22    you're doing, so it will be good.
23            Is this young lady somebody new that we're training?
24            MS. LEE:  Yes, Judge.  Let me introduce one of our
25    future law students, Alexandria Bowles.  But she will be
```

 1   applying to law school.  So in the meantime, we're having some

 2   real live experience here.

 3              THE COURT:  Oh, that's great.  That's great.

 4              Well, is she going to help you with keeping up with

 5   the exhibits and things or just observe?

 6              MS. LEE:  Oh, my stars.  She has earned the stripes,

 7   let me tell you.  It's been a busy, busy few weeks.

 8              THE COURT:  Oh, well good.  Well, I'm glad that, you

 9   know, she's got a good teacher.  That will be great.

10              MS. LEE:  Thank you, Judge.

11              THE COURT:  Is this -- this is -- when you're a real

12   lawyer, real lawyers sometimes don't want to do some of these

13   things.  These are the things real lawyers should know how to

14   do.  And it will be -- it will be good for you to learn all

15   those things just like it will be good for you to do your own

16   investigating when you get to be a real lawyer, not that these

17   folks aren't experts, but you need to go out and make sure

18   before you put somebody on the stand, you know, what's going

19   on, okay?  Especially in civil cases.  So you'll see that if

20   you decide not to be a prosecutor and you go somewhere and you

21   want to make a living, get rich.

22              Okay.  All right.  Anything else from y'all,

23   Mr. Junker?

24              MR. JUNKER:  Judge, we've reached a number of

25   stipulations on exhibits as far as foundation.  And I believe

```
1    we're going to pre-admit the videos of the robbery, but we can
2    address that after jury selection.
3              THE COURT:  Do you want to just go through all that
4    and we'll have it all done?
5              MR. JUNKER:  I think we're still --
6              THE COURT:  Are you working on the list right now?
7              MR. JUNKER:  Yes, Your Honor.
8              THE COURT:  Okay.  If you'll get that done, we'll try
9    to do it before the jury gets up here, but if not, so be it.
10   And we'll just go through that after a break, before we start
11   the trial.
12             MR. JUNKER:  I think it would be easier after a
13   break, if that would be all right with the Court.
14             THE COURT:  Okay.  That will be great.
15             MR. LUND:  If you want us to wait to do that as well,
16   then that's fine, but we can do ours very quickly.
17             THE COURT:  Yeah, why don't y'all do that.
18             MR. LUND:  Defendant Hatchett has four exhibits, DX
19   101 through 104.  The Government has agreed to pre-admit all of
20   those, and we'd ask that they be offered and accepted into
21   evidence.
22             MR. JUNKER:  That's correct, Your Honor.
23             THE COURT:  All right.  Then they are admitted into
24   evidence.  Okay.
25                  (Defendant's Exhibit Nos. 101-104 received)
```

 1              MR. JUNKER:  And the same will be true of the

 2     exhibits for Mr. Anderson as well.  I think there's two at the

 3     last count.

 4              E.X.?

 5              (Pause)

 6              MR. JUNKER:  Well, we'll deal with that later, Your

 7     Honor.

 8              THE COURT:  Okay.  Y'all can come up with that later,

 9     Mr. Martin, if you want to.

10              MR. MARTIN:  Be fine.

11              THE COURT:  Okay.  But everybody needs to know, even

12     though you pre-admit, if you don't use it, it's not part of the

13     trial.  You've got to make sure that you use it at some point,

14     because if it's not referenced or used in front of the jury,

15     then it's not going to be -- so even though I say it's

16     pre-admitted, it's not admitted-admitted.  I kind of sound like

17     double-secret probation in Animal House or something.  But it's

18     not really part of the record unless you make reference.

19              So somebody is keeping a record on your side?

20              MR. JUNKER:  Yes, Your Honor.

21              THE COURT:  Great.

22              MR. LUND:  Yes, Your Honor.

23              THE COURT:  Okay.  Thank y'all.

24              MR. JUNKER:  And, Your Honor, I just want to

25     double-check my understanding of that, too.  It's my

 1    understanding also that if all sides agree to stipulate, for

 2    example --

 3              THE COURT:  That's fine.

 4              MR. JUNKER:  -- that that's okay then for it to go

 5    back?

 6              THE COURT:  Yeah, I'm okay with that.

 7              MR. JUNKER:  Even if not used?

 8              THE COURT:  Even if it's not used.  If y'all all

 9    agree, that's fine with me.

10              MR. JUNKER:  Thank you, Your Honor.

11              THE COURT:  But we probably should make some

12    reference to the jury and say that to them so they'll go, "We

13    didn't see that during the trial."  I just need to say to them

14    or give them a stipulation or something, let them know what's

15    going on.

16              MR. JUNKER:  Thank you, Your Honor.

17              THE COURT:  You bet.

18              Anything else that y'all need before we get the

19    jurors up here -- the prospective jurors up here?

20              And y'all will move around to this side.  And I think

21    that will be better.

22              And we figured out what -- we've got one venire

23    person in a wheelchair.

24              MR. JUNKER:  Okay.

25              THE COURT:  So we'll deal with that appropriately,

```
 1    Number 3, so they'll be out of order.  And everybody needs to
 2    know that.  They'll be seated out of order, okay?
 3              Ronnie, where are you going to put them?
 4              THE COURTROOM DEPUTY CLERK:  At the end here on the
 5    front.
 6              THE COURT:  On the front?
 7              THE COURTROOM DEPUTY CLERK:  Yes, sir, and right at
 8    the end.
 9              THE COURT:  So when you make everybody step over
10    everybody else, the way we normally do it, you're not going to
11    do that with them.
12              THE COURTROOM DEPUTY CLERK:  No, sir.
13              THE COURT:  Have them come in last, okay?  I don't
14    mean last of everybody, but just last of that little row.
15              Okay.  Anything else?
16              MR. JUNKER:  Not from the Government, Your Honor.
17              THE COURT:  Okay.  Great.
18              And I'm assuming opening statements -- we were going
19    to make opening statements?
20              MR. DE LA GARZA:  I'll make the opening statement for
21    the Government, Your Honor.
22              THE COURT:  Mr. de la Garza, you're doing
23    criminal-criminal stuff now, not civil-criminal stuff, right?
24              MR. DE LA GARZA:  Double-secret criminal stuff.
25              THE COURT:  There it is.  We're glad to have you.
```

```
 1                  How about y'all?  Going to make opening statements?

 2                  MR. ROGERS:  I'll be opening, Your Honor.

 3                  THE COURT:  Okay.

 4                  MR. MARTIN:  And I would --

 5                  THE COURT:  You'll wait and let us know?

 6                  MR. MARTIN:  Yes.  Thank you.

 7                  THE COURT:  Okay.  That's fine, too.

 8                  All right.  Okay.  I think that's everything.  If

 9       there's something else, I haven't thought of what it is.

10                  MR. LUND:  Your Honor, in terms of length of opening

11       statement, I was wondering if the Court had guidance on that.

12                  THE COURT:  How long do y'all want?

13                  MR. ROGERS:  Your Honor, I don't believe we will need

14       more than ten minutes.

15                  MR. DE LA GARZA:  That's acceptable to the

16       Government, Your Honor, no more than ten minutes.

17                  THE COURT:  That's great.  Okay.

18                  Oh, for those of you who haven't had trials in here,

19       you cannot do the State court thing, which is get in the jury,

20       with the jury, and kind of sit there with them and touch them

21       and feel them.  No, no, we're not doing that.  You've got to

22       stay touching the podium.  We'll turn the podium around, but if

23       you're not touching the podium, you're too far away.

24                  And the acoustics are terrible in hear, and so you

25       need to make sure that you stay where the microphone will pick
```

```
 1   you up so that people can hear you.
 2             And, no, you can't do -- I had a lawyer bring in
 3   Stretch Armstrong.  Y'all remember that toy?  Remember his arms
 4   would reach forever --
 5             MR. JUNKER:  Yeah.
 6             THE COURT:  -- so he could get close to the jury.
 7             If y'all have arms like that, I might let you do it
 8   then, but I doubt that you do.  But I still have my little
 9   Stretch Armstrong in here that somebody gave to me as a result
10   of that.
11             So I can't think of anything else.  Y'all are all
12   experienced trial lawyers, so you don't need a bunch of
13   instructions from me.
14             MR. JUNKER:  Your Honor --
15             THE COURT:  Oh, do y'all need -- are y'all set up in
16   the conference room, somebody?
17             MR. ROGERS:  Yes, Your Honor, we are.
18             THE COURT:  Y'all are?
19             MR. ROGERS:  Yes.  Thank you.
20             THE COURT:  Okay.  And y'all -- you need a conference
21   room up here?
22             MR. DE LA GARZA:  We've been provided one, Your
23   Honor.  We've checked it out.  We don't have anything moved in
24   yet, but it's --
25             THE COURT:  And you're okay?
```

 1              MR. DE LA GARZA:  Yes, Your Honor.

 2              THE COURT:  And you can set it up, make it into a war

 3      room, whatever you need to do.

 4              MR. DE LA GARZA:  Thank you, Your Honor.

 5              THE COURT:  It's just -- at the end of the evening if

 6      you've brought food in, clean it up.  That's all I ask.

 7              And try not to -- I've had different groups

 8      actually -- I don't know what happened, but broke the glass on

 9      top of the -- I know.  It's kind of strange.  I don't know what

10      was going on in there.  Maybe there was some pounding on the

11      table or something.

12              Okay.  I think that's it.  Y'all have got your lists

13      of the prospective jurors.

14              And then when we come up here in front of me, I'll

15      have a person standing here facing Todd so that he can get

16      everything.  And one set of y'all stand here, one set of y'all

17      stand right there, and let's just make sure they're constantly

18      talking right into that.

19              So usually the prosecutors will stand over here, and

20      then you'll move around when you're questioning so that they're

21      always facing Todd.  That will be kind of the thing that works.

22      And then the other lawyer can stand over here, and y'all can

23      talk back and forth or, you know, whatever.  But let's just

24      make sure all these folks are -- and that will probably take

25      some period of time to get that all done since y'all aren't

```
 1    going to be doing your other voir dire.
 2              Okay.  Anything else?
 3              All right.  Anything from the Government?
 4              MR. JUNKER:  Not from the Government, Your Honor.
 5    Thank you.
 6              THE COURT:  Okay.  Well, y'all just -- as soon as we
 7    get the jury up here, then we'll do it, okay?
 8              Thank y'all.
 9              Off the record.
10              (Discussion off the record)
11              (Recess from 9:42 to 10:18)
12              THE COURT:  Hold up a minute before y'all bring them
13    in, David.
14              Let me tell you something.  On this kidnapping issue,
15    I don't see it.  I'm willing to let it go to the jury, but the
16    odds of me -- I mean, I'm not necessarily willing to let it go
17    to the jury.  I'll let you try it, and we'll see, but I just
18    don't see that it amounts to kidnapping.  So I'll probably take
19    it away before it goes to the jury.  Y'all just need to be
20    aware of that.  I just don't see -- I've already ruled that way
21    in a very similar case involving -- I believe it's called
22    jugging, where someone was locked in the back of a room, I
23    think were the facts.  I'm trying to remember right now.  But I
24    just don't see that that amounts to kidnapping.  I mean, I
25    think this is a stretch.  So, anyway, you just need to be
```

1    prepared for that, okay?

2             MR. JUNKER:  Understood, Your Honor.

3             THE COURT:  Do y'all understand?

4             MR. ROGERS:  Yes, Your Honor.

5             MR. LUND:  Yes, Your Honor.

6             (Pretrial hearing concluded)

```
 1                               INDEX
```

```
 2    Pretrial.................................................  3

 3    Rule invoked............................................ 11
```

```
 4
```

```
 5    DEFENDANT HATCHETT'S EXHIBITS                        Received

 6        101  Declaration of Alisha Gallagher              15

 7        102  Declaration of Trent Touchstone              15

 8        103  Facebook photo and title                     15

 9        104  Facebook posts                               15
```

```
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          I, TODD ANDERSON, United States Court Reporter for the

2    United States District Court in and for the Northern District

3    of Texas, Dallas Division, hereby certify that the above and

4    foregoing contains a true and correct transcription of the

5    proceedings in the above entitled and numbered cause.

6          WITNESS MY HAND on this 10th day of July, 2019.

7

8

9
                                /s/Todd Anderson
10                              TODD ANDERSON, RMR, CRR
                                United States Court Reporter
11                              1100 Commerce St., Rm. 1625
                                Dallas, Texas  75242
12                              (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25