1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF TEXAS

3                    DALLAS DIVISION

4
   UNITED STATES OF AMERICA,     )        3:14-CR-340-K
5              Government,        )
                                  )
6                                 )
   VS.                           )        DALLAS, TEXAS
7                                 )
                                  )
8  TREVEON DOMINIQUE ANDERSON,    )
              Defendant.          )        May 29, 2019
9

10             TRANSCRIPT OF SENTENCING HEARING

11             BEFORE THE HONORABLE ED KINKEADE

12                UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15

16

   FOR THE GOVERNMENT:          MR. JOHN J. DE LA GARZA
17                              UNITED STATES DEPARTMENT OF JUSTICE
                                NORTHERN DISTRICT OF TEXAS
18                              U.S. Courthouse, Third Floor
                                1100 Commerce Street
19                              Dallas, Texas  75242
                                john.delagarza@usdoj.gov
20                              (214) 659-8682

21
                                MR. WALT M. JUNKER
22                              UNITED STATES DEPARTMENT OF JUSTICE
                                NORTHERN DISTRICT OF TEXAS
23                              U.S. Courthouse, Third Floor
                                1100 Commerce Street
24                              Dallas, Texas  75242
                                walt.junker@usdoj.gov
25                              (214) 659-8630

```
 1   FOR THE DEFENDANT,          MR. E.X. MARTIN
     TREVEON DOMINIQUE ANDERSON: Law Offices of E.X. Martin
 2                               8828 Greenville Avenue
                                 Dallas, Texas  75243
 3                               exmartin@airmail.net
                                 (214) 343-7400
 4

 5                               MS. CAROLYN A. HILL
                                 Attorney at Law
 6                               4144 N. Central Expressway
                                 Suite 1200
 7                               Dallas, Texas  74204
                                 carolynhillatty@gmail
 8                               (214) 418-3867

 9

10

11

12

13

14

15

16

17

18
     COURT REPORTER:            MR. TODD ANDERSON, RMR, CRR
19                              United States Court Reporter
                                1100 Commerce St., Rm. 1625
20                              Dallas, Texas  75242
                                (214) 753-2170
21

22

23        Proceedings reported by mechanical stenography and

24   transcript produced by computer.

25
```

```
 1                SENTENCING HEARING - MAY 29, 2019
 2                      P R O C E E D I N G S
 3          THE COURT:  Okay.  Treveon Dominique Anderson.  Is
 4    that the one you want to do first, Ronnie?
 5          THE COURTROOM DEPUTY CLERK:  Yes, sir.
 6          MR. MARTIN:  Judge, if we could have a minute.
 7    Carolyn had to leave the room for a minute, and she'll be right
 8    back.
 9          THE COURT:  Okay.
10          (Pause)
11          THE COURT:  What now?
12          MR. MARTIN:  Can I approach?
13          THE COURT:  Yeah.  Both of y'all can.
14          (Bench Conference held off the record)
15          THE COURT:  All right.  Case of United States of
16    America versus Treveon Dominique Anderson, Cause Number
17    3:14-CR-340-K.
18          Mr. Walt Junker is here, and Mr. John de la Garza is
19    here, too.
20          MR. DE LA GARZA:  Yes, Your Honor.  Good morning.
21          THE COURT:  Are y'all both ready?
22          MR. DE LA GARZA:  Yes, Your Honor.
23          THE COURT:  Okay.  And Mr. E.X. Martin and
24    Ms. Carolyn Hill are here for Mr. Anderson.  And y'all are
25    ready?
```

```
 1              MS. HILL:  We are, Your Honor.
 2              THE COURT:  Okay.  Mr. Anderson, on October 24, 2018,
 3    you were convicted by a jury of the five-count Fifth
 4    Superseding Indictment that had been filed on September 11,
 5    2018.
 6              And what they found you guilty of in Count One was
 7    conspiracy to interfere with commerce by robbery; and in Count
 8    Two, interference with commerce by robbery and aiding and
 9    abetting; in Count Three, using, carrying, and brandishing a
10    firearm during and in relation to a crime of violence and
11    aiding and abetting; and Counts Four and Five, kidnapping and
12    aiding and abetting.
13              And I will dismiss the Third and Fourth Superseding
14    Indictment today.  And everybody agrees that's what I should
15    do, correct?
16              MR. JUNKER:  Yes, Your Honor.
17              MS. HILL:  Yes, Your Honor.
18              THE COURT:  And then there are objections that y'all
19    have, the Defendants have, to the presentence report.  Your
20    main objection is the two-level enhancement for obstruction of
21    justice, and then the Government had some clarifications.
22              And did the Probation Department accept y'all's
23    clarifications?
24              MR. JUNKER:  Yes, Your Honor.
25              THE COURT:  Okay.
```

```
 1              MR. DE LA GARZA:  They don't affect the sentencing
 2     range.
 3              THE COURT:  Okay.  Okay.  All right.  And so I'm
 4     ready for y'all to go into your objections and then into
 5     anything you have in mitigation.
 6              MS. HILL:  Your Honor, just briefly.
 7              Mr. Anderson is respectfully requesting that the
 8     Court deduct or strike the two-level enhancement for
 9     obstruction of justice.
10              Supposedly, when we were here in trial there were
11     some cooperating defendants that were in the same bust as
12     Mr. Anderson.  If you look at their transcripts as to what they
13     said, both cooperating defendants admitted that they saw
14     Mr. Anderson talking, however, that they could not hear what
15     the conversation was about between Mr. Anderson and whoever he
16     was talking to.
17              One of the defendants, Defendant Jackson, admits that
18     he was never threatened directly by any other inmate and admits
19     that his comments made by other inmates who are not related to
20     Mr. Anderson's case did not mention Defendant Anderson.
21              Cooperating Defendant Aitch was also in the same bus,
22     and he also admitted that he was never threatened on the bus by
23     Defendant Anderson and that he could not hear any of the
24     Defendant's conversations with any of the other inmates in the
25     bus.
```

1          My understanding is that Mr. Anderson was in the very

2     front of the bus while the cooperating defendants were in the

3     very back of the bus.

4          Any statements that were made by these cooperating

5     defendants were told to a third party or even if they even

6     occurred.

7          They don't show at any time that Mr. Anderson

8     directly threatened them or that Mr. Aitch felt intimidated

9     directly or that there was any harm to them.

10          It appears that most -- any of these testimony -- or

11     reports that Defendant Turner and Defendant Aitch gave are just

12     speculation.  This is just based on what they think they may

13     have heard by somebody else.

14          We're requesting that based on the lack of evidence

15     that the Court strike the two-level enhancement and that the

16     Government has not met its burden of proof to sustain this

17     enhancement.

18          THE COURT:  Okay.  Government?

19          MR. JUNKER:  Your Honor, I think that what counsel

20     has said about Mr. Aitch as being in fear is probably correct;

21     however, what they're leaving out and what we did add in our

22     objections to the PSR is that there was a second day that one

23     of the cooperating --

24          THE COURT:  You mean in your response to their

25     objections?

1          MR. JUNKER:  Yes.

2          THE COURT:  Okay.

3          MR. JUNKER:  There was a second day where, again, a

4   witness was transported with their client, and that day a

5   direct threat was made.  The threat, not to gild the lilly,

6   Your Honor, was that the Defendant expressed confidence in the

7   fact that he -- in that he would not -- he would be found not

8   guilty and then said that once he's out everybody has got to

9   go.  And the witness interpreted that to mean that the witness

10  and the witness's family and anyone related to the witness

11  would be fair game once he got out.

12          So I don't want to make more of that than it is, but

13  there was a direct contact, direct statement between the

14  Defendant and the witness on the second day, so I would like to

15  point that out.

16          THE COURT:  Ms. Hill?

17          MS. HILL:  Your Honor, my understanding is that that

18  conversation did not occur and that Mr. Anderson believes that

19  he -- these statements are being made because he was in trial

20  and these cooperating defendants were testifying against him.

21          My client denies making these statements.  And,

22  again, without them physically being here, it appears to be all

23  hearsay.

24          THE COURT:  Okay.  Anything else, Mr. Junker?

25          MR. JUNKER:  No, Your Honor, not on this particular

```
 1   objection.
 2          THE COURT:  Okay.  All right.  Okay.  Then I'm
 3   ready -- anything else on -- I think you objected to 74,
 4   paragraph 74.
 5          MS. HILL:  Your Honor, the only other issue was just
 6   that we're requesting that the Counts One, Two, Four, and Five
 7   be run concurrently as opposed to consecutively.  I believe
 8   they all have a cap of 20 years.
 9          And just for clarification, just because I noticed
10   that the PSR --
11          THE COURT:  Count Three is mandatory.
12          MS. HILL:  Right.  That's the brandishing, yes, sir.
13          THE COURT:  Okay.
14          MS. HILL:  And just for clarification purposes,
15   because I noticed on the PSR his Social Security number is
16   still incorrect.  I would like the Court to be aware that his
17   real Social Security number is 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, and it is not the
18   one that was put on the PSR.
19          THE COURT:  That's the Defendant's?
20          MS. HILL:  Yes.  I mean, that's been an issue at
21   trial, and it continues to be an issue as far as incorrect
22   Social Security number on his PSR.
23          THE COURT:  Okay.  Well, I agree to correct that.
24          MS. HILL:  Thank you.
25          And I believe that would be all that we would have at
```

1    this point.

2              THE COURT:  All right.  What do you have in

3    mitigation?

4              MS. HILL:  Your Honor, I know my client wanted to

5    make a statement.

6              Mr. Anderson, of course, in working with us since I

7    have been appointed on the case, I have had a very -- actually

8    very good relationship with him.  When we started trial, he

9    worked very well with me.

10             I know that he made a choice that was probably not

11   going to go in his favor, but he chose -- that was his choice,

12   and we did what he wanted to do.  And I believe that he's here

13   to accept his punishment.  Obviously, we are requesting some

14   leniency.

15             He does have two little kids back home that he still

16   has to raise at some point or try and attempt to raise.  So

17   we're asking that the Court consider those facts as well as his

18   drug addiction that may have paid a -- played in this one.

19             We're also asking, if the Court can, to possibly

20   refer him or allow him to do some type of inpatient drug

21   treatment while he's in treatment -- while he's in prison so

22   that hopefully if and when he does get out he can hopefully

23   come out as a better person.

24             But I know that Mr. Anderson did have a couple of

25   things he wanted to address the Court with.

```
 1              THE COURT:  Okay.
 2              MR. MARTIN:  Judge, if I may.
 3              THE COURT:  Okay.
 4              MR. MARTIN:  I had the same thing.  I had no
 5    difficulty with dealing with this man.
 6              THE COURT:  Thank you.
 7              Okay.  Mr. Anderson, you don't have to say anything.
 8    That's up to you.  But if you want to, now is your chance.
 9              THE DEFENDANT:  For one, I want to thank the whole
10    court for finally letting this day come, for me to finally
11    stand in front of you and speak my peace.
12              I went to trial because I'm innocent.  And this stuff
13    that was presented in trial proves that I was innocent.
14              There were a couple of things that were mixed up and
15    a couple of lies that was key to getting me found guilty.  But
16    if the people that was in position to tell the truth would have
17    told the truth, I wouldn't be standing here right now.
18              I wanted to bring a couple of things to your
19    attention and clarify them.
20              Number one is the Social Security.
21              THE COURT:  Your Social Security number?
22              THE DEFENDANT:  Yes, sir.
23              MS. HILL:  It's incorrect.
24              THE COURT:  Okay.
25              THE DEFENDANT:  When we came to trial and Mr. Ibrahim
```

 1   got on the stand, Mr. Martin asked him what was my Social

 2   Security number.  He stated the wrong one, ended in 7228.  Then

 3   Mr. Martin presented Exhibit A, which is my correct Social

 4   Security card, and asked him did he do the research with the

 5   Social Security Administration and verify who this person --

 6   who it came back to.  And he said yes, he do -- he did.  And he

 7   said that this number ending in 5626 is my Social Security

 8   number.

 9           Then Mr. Martin asked him, "Did you verify the names

10   and the numbers?"

11           And he said yes, which was wrong, because the Social

12   Security number ending in 7228 has a different name.

13           Both of them have the exact same name, Treveon

14   Dominique Anderson, but the other person's name is spelled

15   different by one letter.

16           So what the Government and the FBI did was mix two

17   identities together, and that was key, because that was -- it

18   would have showed the jury it's another person out there that

19   they have me mixed up with.

20           That was one thing that was key.  I felt like if they

21   would have told the truth, that I probably would have -- the

22   outcome would have been different.

23           Then another thing was during our suppression hearing

24   you asked Mr. Junker a specific question about the cell site

25   location data.  And you asked him -- when you was trying to

1   make your decision, you asked him, you said, "Are you telling

2   me that these cell phone records prove that Mr. Anderson was in

3   Irving at the time of the robbery?"

4           And Mr. Junker told you yes.

5           And I feel like that was key to my suppression

6   hearing getting denied, because at trial the cell phone expert

7   got on the stand and said they didn't know where the phone was

8   for three hours.

9           And then both of the witnesses that did testify

10  against me told two different stories.  One said I was there;

11  one said I wasn't at certain times.

12          Mr. Aitch got on the stand and said he had been

13  knowing me for four years.  I went to trial October 22, 2018.

14  Four years from then is 2014.  This robbery happened in 2013.

15  I told my lawyer that I met him in 2014.  There's no way if

16  he'd been knowing me for four years that I committed a robbery

17  with you.

18          So that was, like, just some key things that if

19  people would have told the truth -- and it was obvious right

20  here in the courtroom they was on the stand under oath, that I

21  wouldn't be standing here in front of you right now.

22          I have two young daughters.  One turned 12 yesterday.

23  And on June the 12th, the other one turns seven.  And I'm

24  hoping and praying that I get back to them as soon as possible.

25  I'm an innocent man.  I want to go back to being a father, a

1   law-abiding citizen.

2            Another thing I wanted to bring up was about the

3   Social Security number.  When the PSR was done, if they would

4   have corrected that, it would have proved everything about me,

5   where I worked at, my income tax returns.  It would have proved

6   everything.  Instead, it was like the PSR avoided putting it in

7   there to paint the picture that I was this other person under

8   the 7228.

9            So I'm just asking for all this stuff to be taken --

10  for you to look at it and see that they messed up a lot and

11  they have the wrong person standing in front of you right now.

12            THE COURT:  Is your date of birth September 7, 1990?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  Is your driver's license Texas 36143450?

15            THE DEFENDANT:  I don't know my driver's license

16  number by heart.

17            THE COURT:  Oh, okay.  That's fine.

18            (Pause)

19            THE COURT:  Are your parents Stefan Cooks and Latanya

20  Anderson?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  Did you live at 1212 Grand Plaza Drive,

23  Apartment 1803 in Houston?

24            THE DEFENDANT:  My mother does.

25            THE COURT:  Did you live there with her?

```
 1                THE DEFENDANT:  I have before.

 2                THE COURT:  During 2010 to 2016?

 3                THE DEFENDANT:  Off and on.

 4                THE COURT:  Off and on.  Okay.

 5           Were you in a common-law relationship in 2011 with

 6   Shawda Sam?

 7                THE DEFENDANT:  Yes, sir.

 8                THE COURT:  Did you go to Forest Brooks High School

 9   in Houston?

10                THE DEFENDANT:  Yes, I did.

11                THE COURT:  And you quit in the eleventh grade?

12                THE DEFENDANT:  Yes.

13                THE COURT:  You got your GED while you were in TDC?

14                THE DEFENDANT:  Yes, sir.

15                THE COURT:  Then you went to barber school in 2011?

16                THE DEFENDANT:  Yes.

17                THE COURT:  Okay.  And then you also learned welding?

18                THE DEFENDANT:  Yes.

19                THE COURT:  In 2000 -- you got it in March 2015 from

20   Industrial Welding Academy in Houston?

21                THE DEFENDANT:  Yes.

22                THE COURT:  Okay.  In high school you were smart in

23   engineering, and you were in an advanced placement class?

24                THE DEFENDANT:  Yes, sir.

25                THE COURT:  Okay.  It would have been a whole lot
```

```
 1   better than being in here, wouldn't it?
 2           THE DEFENDANT:  Yes, sir.
 3           THE COURT:  So these people that testified in here
 4   and said that you were -- took part in the robbery, they're
 5   just not telling the truth?
 6           THE DEFENDANT:  Yes, sir.  And it was proven on the
 7   day in trial.
 8           THE COURT:  Okay.  And did you know those people at
 9   all?
10           THE DEFENDANT:  I know of them.
11           THE COURT:   In the neighborhood?
12           THE DEFENDANT:  What's his name?  Mr. Turner, he's
13   from a neighborhood that have conflict with my neighborhood.
14           THE COURT:  Okay.
15           THE DEFENDANT:  Our friends don't get along, so I
16   know him -- well, I know of him.  I don't know him, like, real
17   personally.  Mr. Aitch, I seen him around.  He's very known,
18   so --
19           THE COURT:  Okay.
20           THE DEFENDANT:  And that was a big thing with me and
21   Mr. Turner.  It was, like, no way me and him can come together
22   and commit a robbery when there's a lot of conflict going on,
23   like --
24           THE COURT:  His neighborhood and your neighborhood?
25           THE DEFENDANT:  Like, a couple of months right before
```

 1   this robbery happened, he -- he said on the stand he was trying

 2   to kill two of my friends at the corner store.  That's why he

 3   was serving 15 years TDC.

 4        THE COURT:  Okay.  All right.  Anything else you want

 5   to tell me?

 6        THE DEFENDANT:  No, sir.  I just want -- that would

 7   be it.

 8        THE COURT:  Okay.  Any other witnesses?

 9        MS. HILL:  No, Your Honor.

10        THE COURT:  Okay.  Mr. Junker?

11        MR. JUNKER:  Your Honor, obviously, the Defendant has

12   had an opportunity to make Rule 29 and 33 motions, and that

13   really seems to be what he's trying to do here today, is extend

14   those motions.

15        Just to briefly respond to some of the allegations

16   that he's made, the Social Security number, the difference

17   between the two, that was testified to at trial and explained

18   at trial, and the Government will stand on the record for that.

19        As far as the suppression hearing and the cell site

20   data, the cell site data did place this defendant coming up

21   from Houston on the date of the incident.  There is -- and

22   we've always been open about the fact that there was a period

23   of time surrounding the robbery where his cell phone was not

24   hitting off the cell towers, but it still shows him going up

25   and going back.  So it's just more than just witness testimony

1     against this defendant.  There's objective, scientific cell

2     phone data testimony regarding this defendant.

3              As far as the witnesses and their credibility, that

4     was an issue for the jury.  The Court properly charged them on

5     that.  They found against the Defendant.

6              Regarding his claims or request for drug treatment, I

7     would simply note that the PSR, the original PSR, says the

8     Defendant did not report any illegal or illicit drug use.  We

9     leave that to the discretion of the Court.

10             But ultimately, Your Honor, this defendant stands

11    before this Court in a totally different category from any of

12    his other co-defendants in that he is one of the individuals

13    who actually had a gun when he performed the robbery.  When his

14    victims cowered before him, he stuck the gun in their face.  He

15    zip tied them.  And then he not only stole all their jewelry,

16    but stole their sense of security.

17             This defendant stands before the Court different from

18    other defendants in the sense that he never cooperated.  He

19    decided to roll the dice and go to trial.  He has not accepted

20    responsibility for his actions.  There's been no repentance, no

21    remorse whatsoever, and we ask the Court to sentence this

22    defendant accordingly.

23             THE COURT:  Okay.  Anything else?

24             MS. HILL:  No, Your Honor.

25             THE DEFENDANT:  Can I say something, Judge?

1            THE COURT:  Yes, sir.

2            THE DEFENDANT:  I want to just speak on what the

3    prosecutor just said.  It's on the record if they go back.  You

4    asked him a specific question.  You asked if the phones

5    traveled from Houston to Dallas and Dallas and back.  You asked

6    him was it in Irving at the time, and he said yes.  So that was

7    the issue with that.

8            He's accusing me of being a person with a gun and

9    stuff.  The person that we watched on the video was a person

10   that was completely covered head to toe.  You can't tell who

11   that person is.  And that's the reason why I'm standing here

12   today.  That's the reason why I went to trial, because I'm

13   innocent.

14           They just made -- they just let two convicted felons

15   just come here and just say, "Well, that's him," to get their

16   time cut, and there was no proof at all.

17           There was no picture of me ever traveling down.

18   There's me -- no proof of me even associating with these people

19   at all.  And that came out at trial.  The two people that

20   testified, one person said I was there when they planned the

21   robbery.  The other person said I wasn't.  I didn't know these

22   people.  I didn't hang around these people at all.

23           So what Mr. Junker is saying is not true, because his

24   two witnesses told two different stories.  If it was true -- it

25   don't matter how many times you tell the truth, the truth is

1    going to be the truth, but a lie is always going to change up.

2    And it came out at trial.

3            So the picture that he's trying to paint is not -- is

4    not true.

5            THE COURT:  All right.  I'm considering the

6    guidelines, the factors of 3553(a).  I'm overruling your

7    objection to the presentence report.

8            And I'm considering where other individuals have been

9    sentenced and where you fall within this conspiracy and where I

10   have sentenced other individuals with similar actions that you

11   have over the course of time.

12           And it is the judgment of the Court you be sentenced

13   to the United States Bureau of Prisons on Counts One, Two,

14   Four, and Five to 240 months in prison; and on Counts -- Count

15   Three, 84 months on top of that.  It will be consecutive.

16           And you'll be on supervised release for a period of

17   three years.  It will be concurrent in all the cases.

18           And you'll -- I'm not ordering a fine.  You don't

19   have the money to pay a fine.

20           You will need to make restitution in the amount of

21   $370,718.72.

22           So your total is 324 months, mandatory and

23   consecutively.  84 months is added back in.

24           And with regard to conditions of supervised release,

25   you will need to pay $500.00 total, $100.00 on each count, for

1    special assessment, which is required by law.

2              And pursuant to the Mandatory Victims Restitution

3    Act, you'll need to make restitution as follows:

4              Jointly and severally in the amount of $370,718.72,

5    jointly and severally with Afraybeom Jackson; Joshua Caldwell;

6    Dominique Pearson; Irving Flanagan; Larry Solomon; Hilton

7    Aitch; Terrence Thompson; Anthony Ray Turner, Jr.; Michael

8    Cornelious; Xavier Ross; Vanlisa Scott; Jimmy Hatchett, all

9    payable to the United States District Clerk at 1100 Commerce

10   Street, Room 1452, Dallas, Texas 75242.

11             The restitution shall be payable immediately, and any

12   unpaid balance shall be payable during incarceration.

13             Restitution shall be disbursed to the following:

14             Tilak Jewelers, $25,000.00, regarding the

15   November 17th, 2013 robbery.

16             And Jewelers Mutual Insurance Company of $345,718.72

17   regarding the November 17th, 2013 robbery of Tilak Jewelers.

18             Upon commencement of the supervised release any

19   part -- if any part of the restitution remains unpaid, you

20   shall make payments on such unpaid balance in monthly

21   installments of not less than 10 percent of your gross monthly

22   income or at a rate of not less than $50.00 a month, whichever

23   is greater.

24             Payments shall begin no later than 60 days after your

25   release from confinement and shall continue each month

 1   thereafter until the balance is paid in full.

 2          In addition, at least 50 percent of the receipts

 3   received from gifts, tax returns, inheritances, bonuses,

 4   lawsuit awards, any other receipt of money shall be payable

 5   toward the unpaid balance within 15 days of receipt.

 6          The payment plan shall not affect the ability of the

 7   United States to immediately collect payment in full through

 8   garnishment, the Treasury Offset Program, the Inmate Financial

 9   Responsibility Program, the Federal Debt Collections Procedures

10   Act of 1990, or any other means available under federal or

11   state law.

12          Furthermore, it's ordered that interest on the unpaid

13   balance is waived.

14          I didn't order a fine.  You didn't have the money to

15   pay a fine.

16          A special assessment of $100.00 per count is ordered,

17   for a total of $500.00.

18          And you shall be placed on supervised release for a

19   period of three years on all the counts, to run concurrently

20   with each other.

21          It is further ordered that upon release from prison

22   you shall comply with the standard conditions contained in this

23   judgment and comply with the mandatory and special conditions

24   stated herein, and they will include:

25          You're not to commit any other crimes.

1              Not unlawfully possess any controlled substances.

2              Cooperate in the collection of your DNA as directed

3    by the probation officer.

4              Not possess a firearm, ammunition, destructive

5    device, or any other dangerous weapon.

6              You shall report in person to the United States

7    Probation Office in the district to which you're released from

8    custody of the Federal Bureau of Prisons within 72 hours of

9    release.

10             Mandatory drug testing is suspended based on the

11   Court's determination that you're a low risk of future

12   substance abuse.

13             Pay any remaining balance of restitution in the

14   amount of $370,718.72.

15             You shall provide the probation officer complete

16   access to all business and personal financial information.

17             I am dismissing the Third and Fourth Superseding

18   Indictment today against you.

19             Do you want me to recommend a penitentiary near

20   Houston?

21             THE DEFENDANT:  No, sir.

22             THE COURT:  Where do you want me to recommend?

23             THE DEFENDANT:  Anywhere but Beaumont.  I don't -- I

24   don't want to go nowhere by Beaumont.

25             THE COURT:  So how about Seagoville?

1          THE DEFENDANT:  Yeah.  That's cool.

2          THE COURT:  Okay.  I'll recommend Seagoville.

3          I will give you credit for whatever time you served.

4  I don't know what that is.

5          MS. HILL:  Your Honor, he's been incarcerated since

6  February 18th of 2016.  Eight -- I'm sorry, February 18th,

7  2016.

8          THE COURT:  '16?

9          MS. HILL:  Yes, sir.

10         THE COURT:  Okay.  All right.  Any other questions

11 y'all want to ask me?

12         MS. HILL:  No, Your Honor, other than my client

13 appreciates your time today, but I believe he's going to want

14 to appeal his sentence.  And I told him he had the right to do

15 so.

16         THE COURT:  All right.  Let me make sure you

17 understand you have the right to appeal this, and that if you

18 can't afford a lawyer -- I'm assuming you can't -- you want me

19 to appoint someone for you?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  All right.  Will y'all go ahead and file

22 the notice of appeal --

23         MS. HILL:  Yes, sir.

24         THE DEFENDANT:  -- and I'll appoint you one?

25         MR. MARTIN:  We prepared that, Judge.

1           THE COURT:  I always appoint a different lawyer to

2     represent you on appeal, okay?

3           THE DEFENDANT:  Okay.  Thank you.

4           THE COURT:  Do you have any questions about that?

5           THE DEFENDANT:  No, sir.

6           THE COURT:  Okay.  All right.  Thank you, sir.

7           MS. HILL:  Thank you, Judge.

8           MR. MARTIN:  Thanks, Judge.

9           MR. JUNKER:  Thank you for your time, Your Honor.

10           THE COURT:  Thank y'all.

11           (Hearing adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                                INDEX

2   Court's ruling............................................ 19

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      I, TODD ANDERSON, United States Court Reporter for the

2   United States District Court in and for the Northern District

3   of Texas, Dallas Division, hereby certify that the above and

4   foregoing contains a true and correct transcription of the

5   proceedings in the above entitled and numbered cause.

6      WITNESS MY HAND on this 10th day of July, 2019.

7

8

9
                               /s/Todd Anderson
10                             TODD ANDERSON, RMR, CRR
                               United States Court Reporter
11                             1100 Commerce St., Rm. 1625
                               Dallas, Texas  75242
12                             (214) 753-2170

13

14

15

16

17

18

19

20

21

22

23

24

25